**2014 BNH 002**    Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                      Bk. No. 13-12924-JMD
                                                                                                                  Chapter 13
John A. James, Jr.,
            Debtor

*William S. Gannon, Esq.*
*William S. Gannon, PLLC*
*Manchester, New Hampshire*
*Attorney for Debtor*

*S. William Dahar II, Esq.*
*Victor W. Dahar, P.A.*
*Manchester, New Hampshire*
*Attorney for Creditor Barbara A. James*

## MEMORANDUM OPINION

### I.  INTRODUCTION

John A. James (the "Debtor") filed Debtor's Ex Parte Motion For Temporary Restraining Order Imposing Automatic Stay Pursuant to Section 362(c)(4)(B) Without Notice Or Hearing and Permanent Order Imposing Automatic Stay After Notice and Hearing (Doc. No. 3) (the "Motion").  On December 4, 2013, the Court entered an order denying ex parte relief because 11 U.S.C. § 362(c)(4)(B) only permits the Court to impose a stay after notice and a hearing, and because the Motion did not satisfy the requirements for a temporary restraining order (Doc. No. 12).  The Court scheduled an evidentiary hearing on that part of the Motion requesting the imposition of a stay under § 362.

The Motion alleges that a stay under § 362 should be imposed because: (1) there has been a substantial change in the financial and personal affairs of the debtor since the dismissal of the next most previous case on September 24, 2013; and (2) there is reason to conclude that the Debtor has the capacity to confirm and fully perform a chapter 13 plan of reorganization.  Both assertions are predicated upon the Associate Attorney Employment Agreement and the Standby Plan Funding Agreement that are financially supported by the Debtor's non-debtor spouse, Jamie A. James ("J. James").  Barbara A. James, the Debtor's former spouse, ("B. James") objects to the Motion because the Debtor has not alleged and cannot show any real substantial or significant change in his financial circumstances or an ability to confirm and complete a chapter 13 plan of reorganization.

The Court held an evidentiary hearing on that part of the Motion requesting the imposition of a stay under § 362 on December 23, 2013.  The parties submitted further written arguments on December 30, 2013, and the Court took the Motion under advisement.  This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTUAL & PROCEDURAL BACKGROUND

B. James and the Debtor were married and divorced prior to the filing of any of the Debtor's petitions for relief under chapter 13 of title 11 of the U.S. Code (the "Bankruptcy Code").  B. James's claim arises from litigation in and orders of the Commonwealth of Massachusetts Essex Division Probate and Family Court (the "Probate Court").  See Exs. J-N.

Prior to and concurrently with the bankruptcy proceedings, the Debtor and B. James have been litigating over the Debtor's obligations in the Probate Court. Id.

On November 6, 2013, the Probate Court ordered the debtor to pay the sum of $55,964.65 to his former spouse or face incarceration for ninety days. The Probate Court suspended the order until December 3, 2013. See Ex. J.

### A. Debtor's First Chapter 13 Case

On December 19, 2011, the Debtor filed his first chapter 13 petition for relief as a skeletal petition, Bk. No. 11-14590-JMD, (the "First Case"). On December 20, 2011, the Court issued a Notice to the Debtor to file the balance of his schedules, statement, and plan on or before January 3, 2012, failing which the case would be dismissed. On December 30, 2011, the Court issued a Contingent Notice of Dismissal to the Debtor to file his declaration regarding electronic filing as required by LBF 5005-4A, failing which the case would be dismissed.

On January 30, 2012, the case was dismissed for failure to file the electronic filing declaration. The dismissal was vacated on Debtor's motion after compliance with the Local Bankruptcy Form. The Debtor obtained an extension of time to file the balance of his petition and filed those documents on February 15, 2012.

On his Schedule I, Statement of Income, the Debtor listed his monthly income of $697.89:

| Line 1: Income- Wages | $1,733.33 |
|---|---|
| Line 7: Income- Business | $600.00 |
| Line 5: Less Payroll Deductions | - $1,635.44 |
| Line 15: Average Monthly Income | $697.89 |

J. James's income is listed as $58,527.42, with a combined average monthly income of $59,225.31.  Debtor's Schedule J listed Average Monthly Expenses of $60,121.97, leaving Monthly Net Income for the Debtor's household of negative $896.66.

B. James filed a proof of claim in the amount of $52,500.21.  The Debtor objected to the claim of B. James, and the Court overruled that objection, finding that B. James's claim was entitled to priority in the amount of $52,500.21.  The Debtor appealed the Court's order overruling the objection to B. James's proof of claim to the Bankruptcy Appellate Panel for the First Circuit (the "BAP").  However, the BAP subsequently dismissed that appeal because the Debtor failed to file an opening brief and appendix in that proceeding.  Accordingly, this Court's order allowing the priority claim became final.

B. James filed a motion to dismiss, arguing that the First Case should be dismissed pursuant to § 1307(c)(11) for failure to pay a $2,500 fee imposed by the Massachusetts Probate and Family Court.  The Court held an initial hearing on the motion, and continued it subject to the Debtor making a payment to B. James, and certain pleadings from the Probate and Family Court being filed and provided to B. James's counsel.  The Chapter 13 Trustee also filed a motion to dismiss, arguing that the First Case should be dismissed because of a failure to make plan payments, because the plan was underfunded, and because: "[I]t does not appear that the Plan is feasible in that it relies upon the speculative large contributions of [the Debtor's] current spouse, while even including [the contributions] his currently stated disposable income on Schedules I and J is negative $896.66, and his Plan is due to escalate to require payments of $1,550.00 per month."  On February 15, 2013, at a continued hearing, the Court granted the Trustee's motion to dismiss and denied B. James' motion to dismiss as moot.

## B. Debtor's Second Chapter 13 Case

Ten days later, on February 25, 2013, the Debtor filed a skeletal chapter 13 petition with the Court, Bk. No. 13-10446-JMD (the "Second Case"). After a delay of forty-five days, on April 11, 2013, the Debtor filed his schedules, statement of financial affairs, and a chapter 13 plan of reorganization. The extended period between the petition date and the filing of the balance of the petition delayed the hearing on B. James's motion to dismiss the Second Case as a bad faith filing under § 1307(c).

The Debtor's schedules in the Second Case showed a negligible change in financial circumstances in the ten days that had elapsed after dismissal of the First Case. On his Schedule I, Statement of Income, he listed his monthly income as $6,410.89:

| Line 1: Income- Wages | $1,733.33 |
|---|---|
| Line 7: Income- Business | $5,000 |
| Line 5: Less Payroll Deductions | - $322.44 |
| Line 15: Average Monthly Income | $6,410.89 |

J. James's income was listed as $59,252.84, with a combined average monthly income of $65,663.73. The Debtor's Schedule J listed Average Monthly Expenses of $65,767.16, leaving the Debtor's household with Monthly Net Income of negative $103.43. While this net monthly income was an improvement over the First Case, it was still negative and did not reflect any ability to fund a chapter 13 plan of reorganization.

With respect to claims in the Second Case, B. James filed the Proof of Claim for a priority DSO claim of $66,337.21, the same amount determined by the Court after a hearing on the Debtor's objection to B. James's claim in the First Case. The Internal Revenue Service (IRS)

filed a proof of claim in the amount of $115,203.38. The third and final claim was filed by the Massachusetts Department of Revenue (MDOR), in the amount of $23,559.26. After the meeting of creditors, the Chapter 13 Trustee filed a motion to dismiss, stating that the Debtor had failed to make timely plan payments; the proposed plan did not provide for the claims of B. James and the IRS; and "employment with his spouse is vague and does not provide a regular source of income."

On May 30, 2013, the Court held an evidentiary hearing on the motion to dismiss under § 1307(c). On September 24, 2013, the Court issued a Memorandum Opinion and entered an Order dismissing the Second Case as a bad faith filing, based on the totality of the circumstances. See In re James, 2013 BNH 011. The Court's findings examined a number of factors. It found no material difference in the Debtor's financial circumstances between the First Case and the Second Case. The minimal improvement in the Debtor's financial circumstances was based upon an unsupported estimate of business income from his practice of law, independent of J. James's law practice. Even assuming the Debtor's household income projections were both stable and accurate, he remained unable to fund a confirmable plan.

Though the Second Case was filed only ten days after dismissal of the First Case and showed little change in financial circumstances, the Debtor delayed forty-five days in filing his schedules and chapter 13 plan. No explanation or reason for the delay was offered or was apparent from the documents filed. The Debtor's pattern of delay in filing required documents was also apparent in his appeal during the First Case to the BAP, where he ultimately did not file the necessary documents to prosecute his appeal of this Court's ruling on his objection to the claim of B. James. Finally, despite the final order in the First Case regarding his former spouse's

domestic support claim, he scheduled her claim in the Second Case at approximately 25% of the amount determined by final order in the First Case, after he failed to prosecute his appeal. The Court found that the Debtor was using the bankruptcy process to delay and alter the orders of the Massachusetts state court in his child support and attorney fee dispute with his former spouse.

      C.      **Debtor's Third Chapter 13 Case**

On December 2, 2013, the Debtor filed this third chapter 13 petition for relief as a skeletal petition, Bk. No. 13-12924-JMD (the "Third Case").  On December 3, 2013, the Debtor timely filed the Motion requesting the imposition of a stay under § 362 ex parte and after a hearing (Doc. No. 3).  The Court denied ex parte relief by order dated December 4, 2013 (Doc. No. 12) and scheduled an evidentiary hearing.  On December 12, 13, and 17, respectively, the Debtor filed the required schedules, statement of financial affairs, and chapter 13 plan of reorganization (Doc. Nos. 20, 21, and 26).

The Debtor's schedules in the Third Case show an apparent significant increase in the Debtor's household net monthly income since the dismissal of the Second Case on September 24, 2013.   On his Schedule I, Statement of Income, he listed his monthly income as $2,320.00:

| Line 1: Income- Wages | $2,150.00 |
| --- | --- |
| Line 7: Income- Business | $600.00 |
| Line 5: Less Payroll Deductions | - $430.00 |
| Line 15: Average Monthly Income | $2,320.00 |

The Debtor's personal net income was listed as $2,090.89 less than in his Second Case, or a decrease of 33%.  J. James's income was listed as $59,252.84, the same amount as in the Second Case, with a combined average monthly income of $61,512.84.  Debtor's Schedule J listed

Average Monthly Expenses of $47,524.89, leaving the Debtor's household with Monthly Net Income of $14,047.95.  This net monthly income is an increase of $14,151.38 over the -$103.43 net monthly income in the Second Case.  The change in the household net monthly income between the Second Case and the Third Case is almost exclusively due to a decrease of $15,174.36 in the monthly business expenses J. James.

The Debtor's schedules in the Third Case list domestic support obligations ("DSOs") to B. James in the total amount of $20,797.22, with $12,725.25 of that amount scheduled as disputed, yet the chapter 13 plan of reorganization provides for the payment of a DSO claim to B. James over the life of the plan in the amount of $66,337.21.  The amount shown in the plan is the amount of the allowed claim in the First Case, but is more than three times the amount scheduled by the Debtor in the Third Case and more than the $55,964.65 that the Debtor was ordered to pay B. James by the Probate Court on November 6, 2013.  The Debtor's schedules list priority unsecured claims in favor of the IRS totaling $56,263.74, yet the chapter 13 plan provides for paying the IRS $69,079.46, or 122% of the scheduled claims, over the term of the plan.

### III.   THE EVIDENTIARY HEARING

At the evidentiary hearing on December 23, 2013, the parties submitted a number of exhibits and the Court heard testimony from the Debtor and J. James.

J. James testified that the vast majority of the income in her and the Debtor's household is hers and that she pays approximately 95% of the household expenses.  J. James testified that certain exhibits entered into evidence reflect her business income and expenses and were

prepared by her accountant.  Those exhibits include her 2011 and 2012 federal income tax returns and a Quick Books profit and loss report for the period January 1 through December 5, 2013.  Exs. 3, 7, 8.  Because the profit and loss report only covers a portion of the month of December, Ex. 3, it is impossible to determine what portions of the income and expenses shown on that report are allocable to December.  However, since the report only covers the first few days of December, the Court shall deem the report to cover the first eleven months of 2013 for purposes of determining average monthly income and expense.  The Form 1040 Schedule C's attached to the 2011 and 2012 federal income tax returns are completed on a cash basis for the law practice based in Massachusetts and the collection practice based in New Hampshire.  Exs. 7, 8.  However, the profit and loss statement for 2013 was prepared on the accrual basis.  Ex. 3.  No evidence was presented on what differences, if any, would exist between accrual and cash basis accounting.

    J. James also testified that the income and expenses in schedules I and J are the Debtor's numbers and she did not assist in the preparation.  She testified that she had not reviewed or provided any such information to the Debtor, but that she and the Debtor had been married for fifteen years and all financial information was available to him.  The schedules filed by the Debtor therefore reflect monthly business income for the law practice operated by J. James as determined by the Debtor, without input from her.

The average monthly income and expense for the two law practices, as reflected in the three documentary exhibits, compared to the Debtor's schedules is as follows:

|  | Debtor's Schedules | 2011 Tax Return (Ex. 7) | 2012 Tax Return (Ex. 8) | 2013 P & L (Ex. 3) |
|---|---|---|---|---|
| Average Gross Monthly Income | $59,253 | $40,478 | $39,212 | $51,512 |
| Average Monthly Expense | $24,199 | $42,462 | $32,048 | $30,643 |
| Average Net Monthly Income | $35,054 | ($1,984) | $7,164 | $20,869 |

J. James testified that she had agreed to enter into an employment agreement with the Debtor, pursuant to which she would employ the Debtor as an associate in her law office, Ex. 5, and a standby funding agreement , Ex. 6, to insure that the debtor would have the income necessary to fund a chapter 13 plan in all events. She declined to further characterize the two agreements beyond testifying that the "agreements speak for themselves."

The Debtor testified that he had prepared his bankruptcy schedules, including Schedules I & J, based upon his prior filings and information available to him from tax and financial records in his home. When questioned about the difference between preparing the schedules in the Second Case and in the Third Case, answered that he had "tried to be more exact." He was unable to explain differences between the monthly income shown in Schedule I, namely salary under the employment agreement of $2,150.00 per month and income from his own law practice of $600.00 per month, and the income in the means test he filed with the Court, or $266.67 per month, other than to say that income from his practice has been low recently.

-10-

In Schedule E, the Debtor listed MDOR as holding a priority unsecured claim for $410.00, which he proposes to pay in his chapter 13 plan.  B. James' counsel asked him why the priority claim in the current case was substantially less than the priority claim in the amount of $5,144.76 filed by MDOR in the prior case on August 5, 2013.  The Debtor claimed, without a detailed explanation, that the amount now owed "was less."  He testified that the primary purpose for filing the Third Case was to permit him to pay the obligations owed to his former wife, B. James, in monthly payments rather than the lump sum ordered by the Probate Court, which he said he could not afford to do.  The Debtor testified that the written employment and standby funding agreements with his current wife assure that the plan will be completed and are the significant change in his financial circumstances from the Second Case.  He admitted that the two agreements are contingent upon the confirmation of a chapter 13 plan.

## IV.  DISCUSSION

The Third Case is the Debtor's third bankruptcy case pending within a year.  Accordingly, no automatic stay went into effect upon the filing of the petition.  11 U.S.C. § 362(c)(4)(A)(i).  The Motion requesting the imposition of the stay was timely filed within thirty days of the petition date.  See 11 U.S.C. § 362(c)(4)(B).  Under the Bankruptcy Code, the Third Case is presumptively filed not in good faith.  See 11 U.S.C. § 362(c)(4)(D).  The Debtor may rebut the presumption by clear and convincing evidence showing that there has been a substantial change in the Debtor's financial or personal circumstances since the dismissal of the previous case and that the current case will likely result in the confirmation of a chapter 13 plan that will be fully performed.  See § 362(c)(4)(D); In re Ferguson, 376 B.R. 109, 119-20 (Bankr.

E.D. Pa. 2007).  The Debtor has the burden of going forward and of persuasion.  See  In re Sarafoglou, 345 B.R. 19, 24 (Bankr. D. Mass. 2006).  Section 362(c)(4)(B) requires the Debtor not only to establish that circumstances have significantly changed since the dismissal of the Second Case, and that a chapter 13 plan is likely to be confirmed and fully performed, but also that the Third Case has been filed in good faith.  Ferguson, 376 B.R. at 120.  Good faith in the filing of a chapter 13 case is determined under the totality of the circumstances.  Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005).  A determination of the good faith of a debtor in filing a chapter 13 case is a fact intensive, multi-faceted inquiry into the debtor's circumstances on a case-by-case basis.  Id. at 212.  In the context of imposing a stay under § 362(c)(4) the factors generally examined include: (1) the debtor's accuracy in stating his debts and expenses; (2) the debtor's honesty in the bankruptcy proceeding; (3) whether the Bankruptcy Code is being unfairly manipulated; (4) the type of debt to be discharged; (5) the reasons the debtor wishes to extend the stay; and (6) any other circumstances that weigh on the wisdom of an extension.  See Sullivan, 326 B.R. at 212;  In re Jenkins, 435 B.R. 378, 383 (Bankr. N.D. Tex. 2010).

      Whether the written employment agreement and standby funding agreement with J. James constitute significant change in the Debtor's financial circumstances and support a finding that a confirmed chapter 13 plan will be fully funded depends primarily upon the net income for the Debtor's household.  The Debtor's schedules indicate that the projected monthly income for his household is $35,054, which after deductions for household expenses leaves projected net monthly income of $14,048.  This amount is a significant increase from the -$103 scheduled in his prior case.  However, all of that increase is due to his nondebtor spouse's net business

income being significantly higher than in his previous case.  The Debtor and J. James both testified that she had not assisted or advised him in the preparation of his schedules, but that he had completed the income and expense information based on records and information available to him in his home.  The Debtor's schedules reflect a material variance from the information in the evidentiary record regarding his spouses business records.  As detailed above, Exhibits 3, 7 and 8 establish her average monthly income from her law practice over the last three years as:

| 2011 | ($1,984) |
|------|----------|
| 2012 | $7,164   |
| 2013 | $20,869  |

These numbers were evidenced by J. James's personal tax and business records and pertain to a business in which the Debtor and J. James contend he has no ownership interest or operational control.  The best case evidence of the net business income of the Debtor's spouse is $20,869, which is materially lower than the $35,054 listed in the Debtor's schedules.  The difference between the figure from J. James's records and the figures in the Debtor's schedules, $14,185, is essentially equal to the net monthly income, $14,048, shown in the Debtor's schedule J.  As between personal tax and business records of J. James, who runs her law practice, and the Debtor's estimates based on unspecified records, her testimony and records have more credibility.  In essence, her records reflect no material change in the Debtor's net monthly household income since the dismissal of the Second Case.

The testimony establishes that the Debtor did not consult with J. James about the amount of her net monthly business income, even though that is the most material factor in the feasibility

-13-

of any chapter 13 plan proposed by the Debtor.  The Debtor's own Schedule I shows that 96% of the gross monthly income for his household is derived from his wife's law practice, a fact that was confirmed by J. James in her testimony at the Evidentiary Hearing.  The Debtor's failure to obtain accurate and/or complete information regarding such a material factor in his ability to formulate and fully perform a chapter 13 plan calls into question his honesty and motives in this Third Case.

The Debtor testified that the primary motivation in filing the Third Case was to pay his obligations to his former spouse over sixty months, rather than in a lump sum.  As stated above, the Probate Court ordered the Debtor to pay the sum of $55,964.65 to B. James on or before December 3, 2013, or face incarceration for ninety days.  The Third Case was filed on December 2, 2013.  In its November 6, 2013 order directing the Debtor to pay, the Probate Court stated:

> The Court finds by clear & convincing evidence that the Defendant [Debtor] has an ability to pay.  The Court has found that the Defendant is a full partner in a law firm with his wife; that the defendant has misrepresented his income . . . . and Defendant and his wife have misrepresented the assets to which the Defendant would have a claim as marital property under 208, § 34.

The findings in the November 6, 2013 order regarding the debtor's interest in his wife's law firm are consistent with findings made by the same state court in an order dated July 22, 2011. Ex. N. It appears that a significant factor in the Debtor's motivation for filing the Third Case is to obtain relief from the Probate Court's findings on his interest in J. James's law practice and his ability to pay without actually prosecuting an appeal of the state court orders in the proper forum.  Such a motivation constitutes an attempt to unfairly manipulate the Bankruptcy Code.

## V.  CONCLUSION

For the reasons discussed above, the Court finds the Debtor has failed to establish by clear and convincing evidence that (1) he filed the Third Case in good faith; (2) that there has been a substantial change in his financial or personal circumstances since dismissal of the Second Case; and (3) that he is likely to confirm and fully perform a chapter 13 plan of reorganization.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   January 17, 2014                             /s/ J.  Michael Deasy
                                                    J.  Michael Deasy
                                                    Bankruptcy Judge